[This opinion has been published in *Ohio Official Reports* at 90 Ohio St.3d 257.]

THE STATE EX REL. HARRIS, APPELLANT, *v*. ATLAS CRANKSHAFT
CORPORATION ET AL., APPELLEES.

[Cite as *State ex rel. Harris v. Atlas Crankshaft Corp*., 2000-Ohio-69.]

*Workers' compensation—Industrial Commission does not abuse its discretion in denying a violation of specific safety requirement application when order is supported by "some evidence"—Ohio Adm.Code 4121:1-5-12(C)(1) requires instruction only on safe machine operation.*

(No. 99-420—Submitted August 22, 2000—Decided November 8, 2000.)

APPEAL from the Court of Appeals for Franklin County, No. 97APD12-1715.

_____

{¶ 1} Appellant-claimant, Daniel C. Harris, Sr., was a long-time employee of appellee Atlas Crankshaft Corporation ("Atlas"). Claimant's department processed forged crankshafts into finished products. Among the machines used was a fully automated monotonic crankshaft broaching machine ("broacher").

{¶ 2} The broaching process essentially shaved the crankshaft's bearings, by indexing a cutting carbide through a rotating crankshaft. The process started with a hydraulic loading arm placing a crankshaft into the broacher. The loader then released the part and returned to the up position.

{¶ 3} Once the crankshaft was in place, it was clamped, and then rotated at a high speed. While the crankshaft was rotating, a circular tool arbor equipped with the carbide tools began a slow revolution around the spinning crankshaft. Near the end of the revolution, the arbor cleared the crankshaft. The crankshaft then stopped spinning, ideally in the index or home position, for removal by the loading arm.

{¶ 4} At this point, the access doors opened and the crankshaft was unclamped. The arbor would continue the short remainder of its revolution, seeking its home position. It is unclear from the record which return to home—the

crankshaft's or the arbor's—signaled the loading arm to descend. In any event, unloading marked the completion of the cycle.

{¶ 5} Of the four broachers in claimant's department, machine number four had, for some time, intermittently malfunctioned. The exact frequency was unknown but has been estimated at two to four times per shift.

{¶ 6} The specifics of the malfunction differ depending on who was asked. The parties seem to agree that the problem was caused when the tool arbor knocked the crankshaft out of position. This would prevent the loader from removing the part and completing the cycle, and could, said some, result in the loader descending onto—and possibly damaging—the broacher's rollers and slides.

{¶ 7} Atlas knew of the problem and had tried to fix it. Repair personnel, however, could not diagnose the problem without actually seeing it occur. Unfortunately, because of its infrequency, repairmen, although they tried, were never at the right spot at the right time to catch the machine in the act of malfunction.

{¶ 8} As a result, Atlas trained its employees in a safe way to deal with the malfunction. Employees were trained to switch the machine from automatic to manual mode. The employee then inserted his or her arm into the broacher and repositioned the crankshaft. All agree that it was impossible for the loader to descend while the broacher was in manual.

{¶ 9} Apparently, sometime in 1992, claimant's seniority prompted his transfer to the number four broacher. Norman Musgrave, an Atlas employee familiar with the broacher, was assigned to train claimant on the number four machine. Claimant had at least one month of training, and, according to Musgrave, more than double that. (Musgrave testified that he had previously trained claimant on how to operate the machine for approximately one month.)

{¶ 10} Musgrave explained to claimant that the machine occasionally malfunctioned and instructed claimant—both verbally and through

demonstration—to put the broacher in manual mode before ever reaching into the machine. At the end of the training session, claimant signed an "Operator['s] Skills Checklist and Task Requirements" form that attested to claimant's understanding of safety procedures involving the number four broacher. Musgrave, however, expressed to supervisory personnel serious misgivings about claimant's understanding of the complex machine and his ability to operate it.

{¶ 11} On January 4, 1993, claimant began running the broacher. On April 14, 1993, the machine had apparently malfunctioned and claimant reached into the machine to right a crankshaft without putting the broacher into manual. The loader, in turn, lowered onto claimant's arm, causing severe injury.

{¶ 12} After his workers' compensation claim was allowed, claimant applied for additional compensation, alleging that Atlas had violated several specific safety requirements ("VSSR"). Among those cited was Ohio Adm.Code 4121:1-5-12(C)(1), which required that "[t]he employer shall verbally and through demonstration instruct the employee in the safe operation and maintenance of abrasive grinding and cutting and polishing equipment."

{¶ 13} At a July 16, 1996 hearing before a staff hearing officer ("SHO") of appellee Industrial Commission of Ohio, claimant conceded that he had been instructed, both verbally and through demonstration, on how to correct the broacher's malfunction. He also stated that he was told to put the machine into manual and was shown how to do it. He testified, however, that he had seen Musgrave insert his arm into the broacher while the machine was still on automatic. Claimant finally indicated that he never really understood the broacher's "many buttons" and was intimidated by it.

{¶ 14} The SHO denied the claimed violation based on the affidavit of Nolan C. Reinhard, production supervisor in Atlas's crankshaft department. The SHO stated:

3

"Based on the October 13, 1995 affidavit of Nolan C. Reinhard, it is found that claimant was given approximately four weeks of training on the machine which injured him, including training both verbally and by demonstration. It is specifically found that this course of training is sufficient to satisfy the cited requirement."

{¶ 15} Rehearing was denied, with the reviewing hearing officer additionally citing transcript evidence attesting to two months of claimant training.

{¶ 16} Claimant filed a complaint in mandamus in the Court of Appeals for Franklin County, alleging that the commission abused its discretion in denying his VSSR application. The court disagreed, after finding that the commission's order was supported by "some evidence," as found by the court's magistrate.

{¶ 17} The cause is now before this court upon an appeal as of right.

_____

*Gene P. Murray*, for appellant.

*Earl, Warburton, Adams & Davis* and *Bruce L. Hirsch*, for appellee Atlas Crankshaft Corporation.

*Betty D. Montgomery*, Attorney General, and *Cheryl J. Nester*, Assistant Attorney General, for appellee Industrial Commission.

_____

*Per Curiam*.

{¶ 18} The specific safety requirement at issue requires the employer to instruct the employee in the safe operation of qualifying machines both "verbally and through demonstration." Claimant acknowledges that he was instructed to place the broacher into the manual mode before reaching into the machine to adjust the crankshaft. He also concedes that he was both told and shown how to put the broacher into the manual mode. Yet, he failed to place the machine in the manual mode at the time of accident.

{¶ 19} Claimant argues that the malfunction rendered the broacher inherently unsafe and that, regardless of instruction, there is no safe way to operate an inherently unsafe machine. The flaw in this argument lies in claimant's description of the broacher as inherently unsafe.

{¶ 20} Claimant leaves unchallenged three key points: (1) the normal broaching process never required insertion of a body part into the machine while it was on automatic, (2) it was not necessary for the machine to remain in automatic in order to correct the crankshaft, and (3) the loader could not descend if the machine was in manual. This undermines claimant's assertion that the machine (and/or his duties) were inherently dangerous.

{¶ 21} Claimant's arguments are not always clear, so perhaps he believes that the broacher was inherently dangerous because the danger zone was accessible during the automatic cycle. If this is the gist of claimant's argument, however, he did not cite an appropriate specific safety requirement. Again, Ohio Adm.Code 4121:1-5-12(C)(1) requires instruction only on safe machine operation. It does not impose the duty implied by claimant. Here, the commission had "some evidence" that claimant was adequately trained. No more is required to sustain denial of this alleged violation.

{¶ 22} The judgment of the court of appeals is affirmed.

*Judgment affirmed.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

_____